UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
*******************************
                              *
PAUL LECLAIR,                 *
     Plaintiff                *
                              *
V.                            *   CIVIL ACTION NO: 04-11633RGS
                              *
HOME DEPOT U.S.A., INC.,      *
     Defendant                *
                              *
*******************************
```

**MEMORANDUM IN SUPPORT OF THE PLAINTIFF'S OPPOSITION TO THE
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**FACTUAL INTRODUCTION:**

Paul Leclair worked as a dedicated counter for an inventory company. On March 14, 2002, Mr. Leclair was working at the Home Depot store in Manchester, New Hampshire, counting inventory in a small alcove off an aisle. The floor of this alcove was raised approximately six inches higher than the aisle floor, forming a platform. Mr. Leclair stepped back to check his work, tripping over some products which were stacked on the alcove floor. Mr. Leclair fell off the platform, fracturing his right arm and wrist.

**LOCAL RULE 56.1 STATEMENT OF MATERIAL FACTS IN DISPUTE:**

1. At the base of the platform, there were products on display in various positions throughout the alcove. (See Exhibit A, Deposition of Plaintiff, p. 60-61 and Depo Exhibit 3).

2. These products were crowded into the alcove. (See Exhibit B, Deposition of Plaintiff, p. 56,59 and Depo Exhibit 1).

3. Leclair stepped backwards to check his work and was not attempting to step off the platform. (See Exhibit C, Deposition of Plaintiff, p. 69).

**LEGAL ARGUMENT:**

**I. SUMMARY JUDGMENT STANDARD:**

Summary judgment procedure is appropriate to raise the question of whether there is a triable factual dispute. A motion for summary judgment first raises the question whether there is a genuine issue of material fact, and then, if there is not, whether the moving party is entitled to judgment as a matter of law. City of Gloucester v. Civil Service Commission, 408 Mass. 292, 298, 297 (1990).

To that end, all doubt as to the existence of a genuine issue of material fact must be resolved against the party moving for summary judgment. Correllas v. Viveiros, 410 Mass.314, 316, 317 (1991). The party who moves for summary judgment has the burden of initially showing that there is an absence of evidence to support the case of the non-moving party shouldering the burden of proof at trial. Kourouvacilis v. General Motors Corporation, 410 Mass. 706, 711 (1991).

Once that is done, the opposing party is required to respond by setting forth specific facts showing that there is a genuine issue for trial. However, the party opposing the motion need not show a perfect case. A reasonable measure of doubt may be tolerated because all doubt as to the existence of a genuine issue of material fact must be resolved against the party moving for summary judgment. Noble v. Goodyear Tire And Rubber Company, 34 Mass.Alp.Ct. 397, 402 (1993).

**II. NEGLIGENCE**

In order to recover in this lawsuit, Plaintiff is required to

prove that the Defendant owed him a duty, that the Defendant breached that duty, that the Plaintiff suffered injury and that the Defendant's breach of duty was the cause of the Plaintiff's injury. The question of negligence is ordinarily a question of fact for the jury to decide. The issue may only be taken from the jury when **no** rational view of the evidence could warrant a finding that the Defendant was negligent. Irwin v. Town of Ware, 392 Mass.745, 764 (1984).

An owner or an occupier of land owes a duty of reasonable care to all visitors. O'Sullivan v. Shaw, 431 Mass. 201, 204 (2000). The landowner must maintain the premises in a reasonably safe condition and warn visitors of any unreasonable dangers of which the occupier is aware or reasonably should be aware. Id. The landowner's duty does not extend, however, to "dangers that would be obvious to persons of average intelligence" because it is "not reasonably foreseeable that a visitor exercising reasonable care for his own safety would suffer injury from such blatant hazards." Id. However, in the case at bar, Home Depot created a dangerous condition through the raised six inch platform in the alcove **and** the overcrowding of products for sale in a confined area. The Plaintiff concedes he was aware of the rise and of the limited area for movement within the alcove, however, the **combination** of these factors created a hazardous condition of which the risks Plaintiff could reasonably be unaware or, which, at least creates a question of comparative negligence for the finder of fact.

One who controls a business premises has a obligation to use due care to keep the premises provided for use of its patrons in a

reasonably safe condition, or at least to warn them of any dangers that might arise from such use. <u>Thurlow v. Shaw's Supermarkets, Inc.</u>, 727 N.E. 2d 532, 534 (Mass.App.Ct 2000). It is important to note that Home Depot, by creating this dual hazard of a raised platform and overcrowding of products in the alcove, had a duty to warn **or** a duty to keep the premises reasonably safe by, perhaps, rearranging the alcove.

Finally, stepping backwards from a well-lit and clearly visible step has been held to be an open and obvious danger to which no duty to warn applies. <u>Donahoe v. Surman's Inc. of Roslindale</u>, 334 Mass. 702, 702 (1956). Here, the Plaintiff clearly did not step back onto a step but rather stepped back to view his work and tripped over products on the alcove floor which caused him to fall **off** the step.

## CONCLUSION

This case clearly is one where facts are in dispute and determinations of negligence rely on witness testimony, credibility and evidence, and as such, summary judgment is not proper. Plaintiff respectfully request that this Honorable Court **deny** the Defendant's Motion.

Respectfully Submitted,
The Plaintiff, by his
Attorney,

Louis S. Haskell BBO: 550818
Cary H. Gianoulis BBO: 649900
16 Pine Street
Lowell, MA 01851
(978) 459-8359

Dated: January 6, 2006

**EXHIBIT A**

```
 1  safety cones and some red "For Sale" signs?
 2       A.   Yes.
 3       Q.   That portion of the display appears similar
 4  to the display that you were working on when you
 5  fell?
 6       A.   Similar, yes.
 7       Q.   Have you seen Exhibit 1 before today?
 8       A.   I think so.  I think so.
 9       Q.   Do you know what store is depicted in
10  Exhibit 1?
11       A.   I think that's the Manchester store.
12       Q.   Do you know when that photograph was taken?
13       A.   I'm not sure.  I don't know.
14       Q.   Are the safety cones that are depicted in
15  Exhibit 1 in the same location as the safety cones
16  that you became involved with in the process of your
17  fall as you described earlier?
18       A.   No.
19       Q.   Is it possible for you to draw into Exhibit
20  1 the platform that was present on the day of your
21  accident?
22       A.   I can try.
23            MR. HASKELL:  Can you do it, do you think?
24            THE WITNESS:  I can try.
```

```
 1       Q.    I'm just looking for an outline sketch of
 2  the approximate location of the platform and the
 3  space that it took up.
 4       A.    (Witness complies).
 5       Q.    Have you now done that?
 6       A.    Yes.
 7       Q.    Do you recall what the platform was made
 8  out of?
 9       A.    Wood.
10       Q.    Do you recall what color it was?
11       A.    It was just natural wood.
12       Q.    Was it one piece or was it several pieces?
13  Could you describe it in any way?
14       A.    It was slats of wood nailed onto a frame.
15       Q.    There was just one top surface of the
16  platform?
17       A.    No.  It was several slats.
18       Q.    But were there steps or was the top of the
19  platform at the same height, the same level?
20       A.    It was all at the same height.
21       Q.    And the same level?
22       A.    Yes.
23       Q.    Do you have any knowledge as to how it was
24  affixed to the display?
```



**EXHIBIT B**

Case 1:04-cv-11633-RGS   Document 17   Filed 02/28/2006   Page 10 of 16

Case 1:04-cv-11633-RGS   Document 13   Filed 01/06/2006   Page 11 of 17

56

```
 1      Q.   You landed on your outstretched right hand
 2 and arm?
 3      A.   Right.
 4      Q.   You didn't see the safety cones when your
 5 foot became involved with them, right?
 6      A.   I didn't see them?
 7      Q.   Well, at the moment that your foot became
 8 involved with those safety cones behind you, that's
 9 something you didn't see, correct; it's something
10 you felt?
11      A.   Yes.
12      Q.   You saw the safety cones after you had
13 already fallen?
14      A.   Right.
15           (Photographs marked as Exhibits 1 and 2
16           for identification)
17      Q.   I'm showing you a photograph we marked as
18 Exhibit 1.  I would ask you to take a look at that,
19 and let me know when you've had an opportunity to
20 look at that.  Have you had a chance to look at
21 Exhibit 1?
22      A.   Yes.
23      Q.   Do you recognize what's depicted in Exhibit
24 1?
```

```
 1              MR. HASKELL:  When he asks you a yes or no
 2   question, answer yes or no.
 3        A.   No.
 4        Q.   Are there any other ways in which Exhibit 1
 5   differs from the scene of your accident, other than
 6   the fact that there's no platform in Exhibit 1?
 7        A.   It's a lot less congested.
 8        Q.   What do you mean by that?
 9        A.   There were more items.  There were flags
10   and driveway markers and all of that area was all
11   full of items.  This is a lot neater.
12        Q.   So there are fewer products displayed in
13   Exhibit 1 than there were at the scene of your
14   accident?
15        A.   Correct.
16        Q.   Does the display in Exhibit 1 have the same
17   -- you described it earlier as an alcove.  Does it
18   have the same shape as the display involved in your
19   accident?
20        A.   Yes.
21        Q.   That's the portion that appears to have
22   kind of a white background in Exhibit 1?
23        A.   Yes.
24        Q.   There appear to be mailbox numbers and
```



Case 1:04-cv-11633-RGS   Document 17   Filed 02/28/2006   Page 14 of 16

Case 1:04-cv-11633-RGS   Document 13   Filed 01/06/2006   Page 15 of 17



**EXHIBIT C**

```
 1  fall as a result of doing that?
 2          MR. HASKELL:  Yes or no.
 3      A.  I was aware, yes.
 4      Q.  Were you also aware that if you fall, you
 5  might be injured?
 6      A.  Yes.
 7      Q.  It's your testimony that you didn't step
 8  off the platform, you stepped backward and became
 9  involved with the cones, which then caused you to
10  fall off the platform?
11      A.  Yes.
12      Q.  When you stepped backward, you didn't look
13  to see what was behind you, correct?
14      A.  I don't believe so.
15      Q.  Did you strike the ground with any other
16  parts of your body other than your right hand and
17  arm or wrist or right hand or arm or wrist?  Let me
18  ask you a better question.
19          Can you describe how you landed?
20      A.  I landed -- the first part of my body to
21  hit the concrete was my right wrist.
22      Q.  Could you describe the position of your
23  body when your right wrist hit the concrete?
24      A.  I just fell back like that.
```